United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYMANTEC CORPORATION,

　　　　　Plaintiff,

　　v.

ZSCALER, INC.,

　　　　　Defendant.

Case No. 17-cv-04426-JST

**ORDER GRANTING MOTION TO STRIKE AND MOTION TO DISMISS**

Re: ECF Nos. 149, 155

## I.    INTRODUCTION

Plaintiff Symantec Corporation filed this case alleging patent infringement against Defendant Zscaler, Inc. ECF No. 1. Symantec alleges that Zscaler infringed the claims of seven patents, U.S. Patent Nos. 6,279,113 ("the '113 patent"), 7,203,959 ("the '959 patent"), 7,246,227 ("the '227 patent"), 7,392,543 ("the '543 patent"), 7,735,116 ("the '116 patent"), 8,181,036 ("the '036 patent"), and 8,661,498 ("the '498 patent"). Id. at 3-4. Before the Court is Zscaler's motion to dismiss for failure to state a claim under 35 U.S.C. § 101 as to two full patents, and one claim of a third patent. ECF No. 142. Specifically, Zscaler seeks to dismiss Symantec's patent infringement claims for the '959 patent, the '227 patent, and Claim 5 of the '116 patent because the claims are directed to patent-ineligible subject matter. ECF No. 149 at 2. Id. at 2. Also before the Court is Symantec's motion to strike the portion of Zscaler's motion to dismiss which argues for dismissal of Claim 5 of the '116 patent because Zscaler failed to comply with Rule 12(g) of the Federal Rules of Civil Procedure, and failed to disclose this ground in its invalidity contentions. ECF No. 155. For the following reasons, the Court GRANTS the motion to strike, and GRANTS the remaining portions of the motion to dismiss.

## II.    BACKGROUND

Plaintiff Symantec develops and sells security assistance products and other internet tools. ECF No. 18 at 5.  Symantec initially offered only security products which resided on a client's computer, but then as technology developed, Symantec offered cloud-based security.  ECF No. 10 at 5.  Defendant Zscaler, a competitor, is "an information security startup" which developed a "cloud-based network-security platform."  Id.

Symantec originally filed this case in the District of Delaware on December 12, 2016. ECF No. 1.  Zscaler quickly filed both a motion to dismiss under 35 U.S.C. § 101 and a motion to transfer venue.  ECF Nos. 9, 11.  The Delaware court heard argument on the motion to dismiss. ECF No. 24.  The parties exchanged discovery, including several sets of interrogatories, subpoenas and requests for production of documents.  See, e.g., ECF Nos. 25, 60, 62.  The District of Delaware then granted the motion to transfer, and transferred the case to this Court.  ECF No. 67.[1]  Symantec filed a First Amended Complaint.  ECF No. 139.  Zscaler then filed the present motion to dismiss in lieu of answering that complaint.  ECF No. 149.

## III.   SYMANTEC'S MOTION TO STRIKE

Before turning to the motion to dismiss, the Court must first address Symantec's motion to strike that motion.  ECF No. 155.  Symantec's motion is directed at Zscaler's motion to dismiss Claim 5 of the '116 patent ("Claim 5").  Symantec argues that (1) Rule 12(g)(2) prohibits Zscaler from raising its § 101 defense for Claim 5 in its second Rule 12(b)(6) motion to dismiss because the defense was not raised in its first motion, and (2) Zscaler's new invalidity theory is "barred" because Zscaler failed to disclose the theory in its invalidity contentions.

As just noted, Zscaler filed a motion to dismiss Symantec's original complaint.  That motion did not make a § 101 argument regarding Claim 5.  Before the Court could adjudicate Zscaler's first motion, however, Symantec filed an amended complaint which asserts *only* Claim 5 from the '116 patent, in an effort to avoid Zscaler's '116 patent invalidity contentions.  ECF No. 161 at 6.  This Court – without considering or needing to consider this history – vacated Zscaler's

---

[1] This Court then related the present case to a later-filed case between the same parties involving a number of other patents, Case No. 17-cv-4414.

first motion to dismiss as moot. ECF No. 155 at 9; ECF No. 138. Zscaler then filed the present, second motion to dismiss, which argues that Claim 5 should be dismissed as invalid. ECF No. 149.

Symantec argues that the Court should strike the portion of Zscaler's motion to dismiss regarding Claim 5 because Zscaler failed to challenge Claim 5 in its first motion to dismiss as required by Rule 12(g) of the Federal Rules of Civil Procedure. ECF No. 153 at 23. That rule provides:

> Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2). Zscaler responds that the Court should nonetheless consider its Claim 5 argument because it would "help[] promote the goals set forth in Rule 1, i.e. to 'secure the just, speedy, and inexpensive determination of every action and proceeding.' ECF No. 161 at 8 (citing In re Apple Iphone Antitrust Litig., 846 F.3d 313, 318 (9th Cir. 2017)). Moreover, it argues, the pending motion is "the first motion to dismiss by Zscaler to be considered on the merits by the Court," not a second motion prohibited by Rule 12(g)(2). ECF No. 161 at 8.

The plain text of Rule 12(g) prohibits a party from filing a second motion to dismiss on a ground that was available but omitted from an earlier motion to dismiss. Fed. R. Civ. P. 12(g)(2). Accordingly, other courts in this district have concluded that a defendant who filed a motion to dismiss may not file a second motion to dismiss asserting defenses that could have been asserted in the first motion. Romo v. Wells Fargo Bank, N.A., No. 15-CV-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016) ("Newly asserted argument . . . which [a defendant] failed to assert in its prior Rule 12(b)(6) motion, may not properly be considered."); Northstar Fin. Advisors Inc. v. Schwab Investments, 135 F. Supp. 3d 1059, 1070 (N.D. Cal. 2015) ("To summarize, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial."); Fed. Agr. Mortg. Corp. v. It's A Jungle Out There, Inc., No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (citing Wright & Miller, 5D Federal

3

Practice & Procedure § 1388, at 491-92 (3d ed 2004)[2]).

However, the Ninth Circuit recently announced a more flexible and efficiency-oriented view of a district court's ability to review arguments offered for the first time in a second motion to dismiss. Affirming Judge Gonzalez Rogers's decision to hear an argument in a motion to dismiss that could have been brought in an earlier motion, the Ninth Circuit reasoned that Rule 12(g) should be read in light of the Federal Rules of Civil Procedure's policy favoring "just, speedy, and inexpensive determination" of actions. In re Apple, 846 F.3d at 318. The court noted that had the district court not considered the argument at that time, defendant would simply have waited until later in the litigation to file a different motion, thereby delaying resolution of the proceeding with no corresponding benefit. Id. at 320. Accordingly, that court concluded that the district court did not err, because the defendant's motion did not "appear to have been filed for any strategically abusive purpose" and considering the motion "materially expedited the district court's disposition of the case." Id.[3]; see also Application of Rule 12(g)—In General, 5C Fed. Prac. & Proc. Civ. § 1385 (3d ed.) ("On the other hand, in a limited number of cases the district court has exercised its discretion to permit a second preliminary motion to present a Rule 12(b)(6) defense, although it was technically improper to do so."). Other courts in this district have also considered second motions to dismiss raising new arguments where doing so would serve the interests of judicial economy. Evans v. Arizona Cardinals Football Club, LLC, 231 F. Supp. 3d 342, 351 (N.D. Cal. 2017); Cover v. Windsor Surry Co., No. 14-CV-05262-WHO, 2016 WL 520991, at *4 (N.D. Cal. Feb. 10, 2016) ("But judicial economy favors proceeding with the motion on its merits despite its technical deficiencies."); Amaretto Ranch Breedables, LLC v. Ozimals, Inc., No. 10-cv-05696-CRB, 2011 WL 2690437, at *2 n.1 (N.D. Cal. July 8, 2011).

---

[2] The updated provision provides "a party is only required to consolidate Rule 12 defenses and objections that are then available to the party. A party is not precluded from making a second motion based on a defense that he or she did not have reasonable notice of at the time that party first filed a motion to dismiss or on a defense that became available only after a motion had been made under Rule 12." § 1388 Application of Rule 12(g)—Limited to Motions That Are "Then Available", 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.).

[3] Perhaps recognizing an incongruity between its holding and the text of Rule 12, the Ninth Circuit characterized its approval of the district court's order as finding a lack of harmless error. In re Apple, 846 F.3d at 320. Nonetheless, the Court's commendatory language makes Apple a roadmap for other cases.

4

Here, the Court likewise concludes that a more flexible approach should govern, and that Rule 12(g) does not bar the Court's consideration of Zscaler's Claim 5 argument.

However, there is a more fundamental hurdle to this Court's review of Zscaler's Claim 5 argument: Zscaler failed to raise the argument in its invalidity contentions. As required by local rule, Zscaler served its invalidity contentions on Symantec on November 17, 2017. ECF No. 155-1. Patent L.R. 3-3 required that Zscaler's "[i]nvalidity contentions . . . contain . . . [a]ny ground of invalidity based on 35 U.S.C. § 101." Patent L.R. 3-3. Zscaler's Patent L.R. 3-3(d) disclosure did not contain any 35 U.S.C. § 101 invalidity ground for Claim 5 of the '116 Patent. ECF No. 155-1 at 3-4. Ex. 1 at 52-53.

Because Zscaler had not disclosed invalidity contentions for Claim 5 at the time it filed its motion to dismiss, it had no right to seek dismissal on this ground. Good Tech. Corp. v. Mobileiron, Inc., No. 5:12-CV-05826-PSG, 2015 WL 3866019, at *2 (N.D. Cal. May 4, 2015) ("Maybe things would be different if at some point MobileIron had sought leave to amend its invalidity contentions.") (declining to consider motion for judgment on the pleadings as to unserved invalidity contentions). To hold otherwise would undermine the policies behind the Court's patent local rules, as well as the more general rule that "any invalidity theories not disclosed pursuant to Local Rule 3–3 are barred . . . from presentation at trial." MediaTek Inc. v. Freescale Semiconductor, Inc., No. 11-CV-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014); see also Radware, Ltd. v. F5 Networks, Inc., 147 F. Supp. 3d 974, 982 (N.D. Cal. 2015). Accordingly, the motion to strike is granted.[4]

## IV.     ZSCALER'S MOTION TO DISMISS

### A.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint

---

[4] Zscaler is currently seeking good cause to amend its validity contentions from Magistrate Judge James, to whom this Court referred discovery. ECF No. 165. Patent Local Rule 3-6 provides for amendment of invalidity contentions "only by order of the Court upon a timely showing of good cause." Judge James will determine the matter in the first instance. If Zscaler is granted good cause to amend its invalidity contentions, it may raise its Claim 5 argument in its answer or otherwise.

lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). "[A]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). "While a complaint . . . does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, a pleading must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"Section 101 of the Patent Act defines the subject matter eligible for patent protection. It provides: 'Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.'" Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (quoting 35 U.S.C. § 101). Implied in this provision is the well-established principle that "abstract ideas are not patentable." Id. (quoting Assoc. for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013)). However, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." Id. After all, "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" Id. (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 71 (2012)). Therefore, courts must distinguish between patents that claim abstract ideas, on the one hand, and patents "that claim patent-eligible applications of those concepts," on the other hand. Id. at 2355.

To draw this distinction, courts engage in a two-step analysis. In step one, courts determine whether the claims at issue are "directed to an abstract idea." Id. at 2356-57. Courts look to whether claims are "directed to a specific improvement" or "to a specific implementation of a solution to a problem." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1338, 1339 (Fed. Cir. 2016). The relevant inquiry is "whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic process and machinery." Clarilogic, Inc. v. FormFree Holdings Corp., 681 F.

Appx. 950, 954 (Fed. Cir. 2017). "The purely functional nature of the claim confirms that it is directed to an abstract idea, not a concrete embodiment of that idea." Affinity Labs of Texas, LLC v. Amazon.com Inc., 838 F.3d 1266, 1269 (Fed. Cir. 2016). A claim that could be performed by a human, excising generic computer implemented steps, is likely abstract. Intellectual Ventures I LLC v. Alstom S.A., 838 F.3d 1307, 1318 (Fed. Cir. 2016); see also Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1258 (Fed. Cir. 2016); Papst Licensing GmbH & Co. KG v. Xilinx Inc., 193 F. Supp. 3d 1069, 1090 (N.D. Cal. 2016) ("[A]utomation of a process using a computer is [ ] insufficient to save the asserted claims from abstractness.").

The same principle applies to claims that "only contain generalized software components arranged to implement an abstract concept on a computer." Id. at 1345. Specifically to software patents, the Federal Circuit clarified that claims related to receiving and categorizing data are abstract. See Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Circ. 2016) ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

If the court concludes in step one that the claims are directed to an abstract issue, the court must then "consider the elements of each claim both individually and as an ordered combination" to determine "whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." Alice, 134 S. Ct. at 2355, 2357 (internal quotation marks omitted) (quoting Mayo, 566 U.S. at 72-73, 78-79). In doing so, the court is essentially asking "whether the claims [ ] do more than simply instruct the practitioner to implement the abstract idea . . . ." Id. at 2359; see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (finding no inventive concept where "the claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database'"). In step two, courts consider the claims in light of the specification. Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1299 (Fed. Cir. 2016) (citing cases). The Supreme Court explained that "[s]tating an abstract idea 'while adding the words "apply it" ' is not enough for patent eligibility." Alice, 134 S. Ct. at 2357-58 (quoting Mayo, 132 S. Ct. at 1294). "Nor is limiting the use of an abstract idea 'to a particular technological environment.'" Id. (quoting In re Bilski, 545 F.3d 943, 957

(Fed. Cir. 2008)).

Because "[v]irtually every invention could be described at a high level in a few words," courts addressing invalidity under <u>Alice</u> "must scrutinize reductive descriptions with great care." <u>24/7 Customer, Inc. v. LivePerson, Inc.</u>, No. 15-CV-02897-JST, 2017 WL 2311272, at *15 (N.D. Cal. May 25, 2017) (quoting <u>Verint Sys. Inc. v. Red Box Recorders Ltd.</u>, No. 14-CV-5403 (KBF), 2016 WL 7156768, at *1 (S.D.N.Y. Dec. 7, 2016)). Furthermore, courts perform "several sanity checks when assessing whether a patent or claim is patent eligible." <u>Finjan, Inc. v. Sophos, Inc.</u>, 244 F. Supp. 3d 1016, 1054–55 (N.D. Cal. 2017). For example, "courts consider whether a claim is so abstract that it would 'pre-empt use of [the claimed] approach in all fields, and would effectively grant a monopoly over an abstract idea.'" <u>Id.</u> Additionally, "courts may ask whether the 'claims [] are so result-focused, so functional, as to effectively cover any solution to an identified problem.'" <u>Id.</u>

A district court may find a patent invalid under Section 101 at the pleading stage via a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), including before claim construction. <u>See</u> <u>buySAFE, Inc. v. Google Inc.</u>, No. 2013–1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014); <u>Open Text S.A. v. Alfresco Software Ltd.</u>, No. 13-CV-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (collecting cases).

**B.  DISCUSSION**

**1.  The '959 Patent**

The '959 patent is titled "Stream Scanning through Network Proxy Servers" and covers the concept of "selectively passing forward file contents that have previously been scanned for the presence of malicious code." ECF No. 1-1 at 33. According to Symantec, the patent "is generally directed to reducing the latency in malicious code detection for computers." ECF No. 139 ¶ 51. The patent manages file scanning by scanning a partial segment, or chunk, of that file to see if it matches chunks found to be safe in the past, rather than scanning the entire file, in order to reduce the load on the scanner at any given time. ECF No. 153 at 5. The patent utilizes hashes to identify each chunk. Hashes of safe chunks uncovered in this process are added to the table of comparators. The patent speeds up the scanning process by avoiding the full scan of a file when

8

possible. Symantec asserts claims 4, 13, 17, 18, and 21 of the patent. Zscaler argues that Claim

17 is representative, and Symantec does not challenge this assertion. ECF Nos. 149 at 13; ECF

No. 153 at 7. Claim 17 recites:

> A computer-readable medium containing computer code instructions
> for managing transmission of a requested computer file from a
> remote host to a client, the computer code comprising instructions
> for:
>
> receiving a chunk of the requested computer file from the remote
> host;
>
> generating a hash of the chunk of the requested computer file;
>
> comparing the hash of the chunk of the requested computer file to a
> hash of a chunk of a previously downloaded computer file; and
>
> transmitting the chunk of the requested file to the client when the
> hash of the chunk of the requested computer file is identical to the
> hash of the chunk of the previously downloaded computer file.

A figure in the patent visually depicts the above claim:



Zscaler argues that the patent is an abstract concept, because it covers simply "comparing currently received content with prior content," which does not require a computer. Zscaler analogizes the process envisioned by this patent to a food inspector who examines part of a shipment and either rejects the whole shipment or examines more boxes if the first part was suspicious. ECF No. 149 at 12-15. Symantec argues that the patent is not abstract because it claims a technical improvement by reducing latency through passing forward file contents that have been previously scanned for malicious code. ECF No. 153 at 8. According to Symantec, the patent improves upon the prior art which "required fully downloading a file and scanning it before beginning to transmit it." Id. at 9.

In Finjan, 244 F. Supp. 3d at 1062, another court in this district concluded at step one that a very similar patent was abstract. The patent at issue, the '844 patent, detailed a "system in which an 'inspector' analyzes particular elements of Downloadables to assess whether they contain suspicious code or operations." Id. "The inspector then generates a Downloadable security profile ('DSP')—detailing the suspicious operations of the Downloadable, and then links this DSP to the Downloadable." Id. The court compared the patent to "the way a . . . clerk in a mailroom may perform conceptually similar tasks," and concluded that the patent was abstract because "the asserted claims themselves only list the abstract ideas of receiving data, extracting information from that received data, then storing that information." Id. at 1059.

The patent is also much like a patent determined to be abstract in Intellectual Ventures I LLC v. Erie Indemnity Co., 200 F. Supp. 3d 565, 568, 574 (W.D. Pa. 2016). The patent in that case claimed "(1) selecting a file; (2) generating a unique value corresponding to the file; (3) comparing that unique value to a bunch of previously generated values that correspond to different types of illicit files; and (4) marking the file for deletion or other treatment if its assigned value matches a known one." Id. That court concluded that the patent was directed to the abstract idea of identifying and categorizing files based on a set of predetermined criteria. Id. at 574.

Finally, the patent is similar to a patent which claimed "receiving information related to a file (an identifier) from a querying computer, characterizing the file based on the identifier and

other stored identifiers, and communicating a result of the characterization back to a querying computer," found invalid in <u>Intellectual Ventures I LLC v. Symantec Corp.</u>, 100 F. Supp. 3d 371 (D. Del. 2015). <u>Id.</u> at 383; <u>see also</u> <u>Intellectual Ventures I LLC v. Symantec Corp.</u>, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("We agree with the district court that receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea.").

For the same reasons, the '959 patent is also abstract. As compared to those patents, this patent operates by scanning segments of a file, rather than the full file, and adds new identifiers or hashes to its table of comparators. Breaking a large task into smaller chunks and adding previously unknown chunks to a database, however, do not make the patent non-abstract. <u>Intellectual Ventures I</u>, 838 F.3d at 1318 ("A claim that could be performed by a human, excising generic computer implemented steps, is likely abstract."). As the <u>Finjan</u> court explained, "this process is similar to how a human might process potentially suspicious mail—for example, a mail inspector might analyze a threatening letter, make a note explaining the particularly suspicious elements of the letter, and link this note to details about the sender. The inspector could then refer to the note in the future when receiving additional mail from the same address." <u>Finjan</u>, 244 F. Supp. 3d at 1063. Thus, the Court concludes that at step one the patent claims an abstract concept.

As to step two, Zscaler argues that the claims are not inventive because they are merely "generic computer functions arranged in a conventional manner." ECF No. 149 at 16-17. Zscaler argues that that "nothing in the claims or specification limits them to specific implementations." <u>Id.</u> at 17. Symantec argues that the specification shows an inventive concept, because the patent technologically improves upon existing approaches which required fully downloading a file for scanning. ECF No. 153 at 16.

<u>Finjan</u> concluded that the '844 patent at issue there – to which this Court has already drawn a comparison – was inventive. 244 F. Supp. 3d at 1065 ("The '844 patent's specific applications to scanning and analyzing Downloadables, and non-conventional use of a remote inspector to perform scanning and linking of a security profile before the Downloadable is made available to web clients, represent an 'inventive concept' because the patent describes a 'specific

technical solution beyond simply using generic computer concepts in a conventional way.'").  The '844 patent operates in a similar manner to the '959 patent, at least when described in general terms.  Both patents claim a system whereby a file or downloadable comes in, and a program assigns a hash identifier or security profile to that file or downloadable, compares it to known files or downloadables in a database, and adds unknown security profiles or hash identifiers to a database.  Finjan, 244 F. Supp. at 1064-65.

However, there are important points of difference between the patents.  First, the patent in Finjan was significantly more detailed in terms of how these general functions were accomplished than is the '959 patent.  Id.  Moreover, the '844 patent in Finjan addressed downloadables, rather than the generic files at issue in this patent.  A downloadable is "an executable application program, which is downloaded from a source computer and run on the destination computer."  Finjan, Inc. v. Blue Coat Sys., Inc., 879 F.3d 1299, 1303 (Fed. Cir. 2018).  Examples of downloadables include Java applets, JavaScript, and plugins.  Finjan, 244 F. Supp. 3d at 1059, 1062.  The '844 patent was the first to address virus scanning for downloadables.  Id. at 1064 ("[A]t the time of its invention, malware security programs were not configured to recognize viruses attached to or configured as Downloadables.").  By contrast, the '959 patent addresses only generic files.  ECF No. 1-1 at 30.

Additionally, the '844 patent utilized a more complex and specific scanning method.  The '844 patent's "'behavior-based' virus scan . . . is distinguished from traditional, 'code-matching' virus scans," like the scans claimed in the '959 patent, "that are limited to recognizing the presence of previously-identified viruses."  Finjan, 879 F.3d at 1059.  "This process is innovative because it allows a malware detection program to detect new viruses, previously unknown files that contain suspicious operations, rather than identifying only known viruses."  Finjan, 244 F. Supp. 3d at 1061.  By contrast, the '959 patent scans by matching files hashes to "identical" previously known file hashes.   ECF No. 1-1 at 35.

As a final contrast, the '844 patent in Finjan relied on a security profile to identify non-malicious and/or previously scanned downlodables, which is a profile made up of specific "potentially suspicious computer operations," or characteristics.  Finjan, 244 F. Supp. 3d at 1064–

12

65. By contrast, the '959 patent relies upon hashes for this process. ECF No. 1-1 at 35. Hashes, also called hash functions, values, or algorithms, are commonplace mathematical algorithms which "use contents of the file to generate a comparatively small-size identifier for the file." Pers. Web Techs., LLC v. Apple, Inc., 848 F.3d 987, 989 (Fed. Cir. 2017); see also Unwired Planet, LLC v. Apple Inc., 829 F.3d 1353, 1361 (Fed. Cir. 2016). The Federal Circuit has concluded that hashes are generic and basic mathematical or algorithmic functions that do not make a patent inventive. Intellectual Ventures I, 100 F. Supp. 3d at 371, aff'd Intellectual Ventures I, 838 F.3d at 1307. By comparing hashes that are "identical," rather than security characteristics which might differ between security profiles, the '959 patent is less inventive. ECF No. 1-1 at 35.

Adding up these differences, and examining the claims individually and collectively in light of the specification, the Court concludes that the '959 patent is not inventive. As to each of the above-described metrics, the patent is significantly less inventive than the '844 patent described in Finjan. Although the '959 patent claims an improvement from the prior art because it reduces latency in scanning by scanning in chunks rather than a full file, this is not an inventive concept, and the ordered combination of the limitations does not provide additional inventive concepts. The concept of breaking a large item into smaller chunks is generic as it is performed by humans without the assistance of a computer regularly. Finjan, 244 F. Supp. 3d at 1063. Even viewing the patent in the light most favorable to Symantec, as the Court must, the Court concludes that it is both abstract and non-inventive, and therefore invalid. Finjan, 244 F. Supp. at 1043. [5]

### 2.    The '227 Patent

The '227 patent generally covers the concept of fulfilling data stream requests in parallel when possible, which Symantec argues increases latency and decreases the memory load in a cache. ECF No. 18 at 5; ECF No. 139 ¶ 61 (alleging in the complaint that the patent "reduc[es] latency in scanning for undesirable content by making data available to scanners in parallel"). The

---

[5] Symantec argues that as to all three patents, there is a factual dispute around inventiveness, so validity cannot be resolved on a motion to dismiss, citing Berkheimer v. HP Inc., No. 2017-1437, 2018 WL 774096, at *6 (Fed. Cir. Feb. 8, 2018). ECF No. 153 at 16, 22, 29. However, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," and the Court resolves the motion as a matter of law based on Symantec's own descriptions of the patent. Berkheimer, 2018 WL 774096, at *6.

13

patent makes data available to some scanners one at a time, in a particular order, when they

modify the data, but all at once to scanners that merely read the data. ECF No. 149 at 20.

Symantec asserts claims 1, 4, 8, 43, and 45 of the '227 patent. ECF No. 149 at 20. Zscaler argues

that Claim 43 is representative:

> A computer readable medium containing a computer program product for efficiently scanning stream based data, the computer program product comprising:
>
> program code for receiving data from a stream;
>
> program code for storing a copy of received data;
>
> program code for informing each of a plurality of scanners that received data is available for scanning;
>
> program code for receiving requests from scanners to scan received data;
>
> program code for fulfilling received requests in parallel, by making a stored copy of received data available to each scanner that requests to scan that received data;
>
> and program code for maintaining a record of fulfilled requests.

Symantec argues that Zscaler has not established that Claim 43 is representative, because Claims 1

and 43 recite different solutions and have different scope. ECF No. 15 at 16. Claim 1 recites:

> A computer implemented method of efficiently scanning steam based data, the method comprising:
>
> a stream manager receiving data from a stream;
>
> the stream manager making received data serially available to a plurality of modify scanners in a specific order, such that data is made available to a next modify scanner after it has been released by a previous modify scanner;
>
> the stream manager making received data available in parallel to a plurality of read-only scanners;
>
> the stream manger, responsive to data having been released by each modify scanner of the plurality and by each read-only scanner of the plurality, transmitting released data to a destination.

ECF No. 1-1 at 54. The Court need not resolve whether Claim 43 or Claim 1 is representative,

because even utilizing Claim 1 as the representative claim, the Court concludes the patent is

invalid. The patent is also well depicted in the following figure:



ECF No. 1-1 at 48.

For step one, Zscaler argues that the '227 patent is abstract because it merely makes "data available to multiple reviewers all at once or one at a time." ECF No. 149 at 20. Zscaler analogizes the patent to the way multiple lawyers on a case sometimes prepare legal briefs: one lawyer might send a draft of the brief for review to three other lawyers all at the same time, or she might send it sequentially so that each may edit the brief in turn. ECF No. 149 at 21-22. So stated, the patent simply performs a human process of reviewing in turn, or all at once, on a computer. Id. Symantec counters that the patent improves upon serial scanning because it makes data available in parallel to read-only scanners, and serially to editing scanners, which both keeps the cache small and avoids serial scanning when possible to speed up the process. ECF No. 157 at 17.

The Court concludes that the patent is abstract. The claims simply "recite the what of the invention," by describing making some data available in parallel, where that is the desired result,

United States District Court
Northern District of California

United States District Court
Northern District of California

"but none of the how that is necessary to turn the abstract idea into a patent-eligible application." 24/7 Customer, 2017 WL 2311272, at *6; see also Clarilogic, 681 F. Appx. at 954 (Fed. Cir. 2017). In Intellectual Ventures, the Federal Circuit found a similar patent abstract under similar reasoning. The patent at issue received file identifiers, characterized the file based on that identifier, and communicated that characterization. Intellectual Ventures I, 838 F.3d at 1313. The court concluded that "filtering files/email—is an abstract idea." Id. So too here, the claims merely filter data either serially to modifiers, or all at once to readers, and so too here, the Court concludes the patent claims an abstract concept. ECF No. 1-1 at 54.

As to step two, Zscaler argues that the claims and specification do not provide any inventive concept. ECF No. 149 at 23-24. Symantec argues that the patent provides a technological solution by making data available in parallel and minimizing cache size. ECF No. 153 at 22.[6] The Court agrees that the patent is not inventive.

First, scanning in and of itself does not make a claim inventive. Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014); Intellectual Ventures I, 838 F.3d at 1319. Second, examining the limitations, individually and collectively, does not persuade the Court that the patent claims an inventive concept. One claim, for example, describes that when a cache which holds data before sending it to the serial or parallel processors, reaches a certain volume, it moves data from short term storage to long term storage. ECF No. 1-1 at 52. This claim is very similar to a claim involved in Fairwarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1094-95 (Fed. Cir. 2016), where the Federal Circuit concluded that a rule which asked whether data was "in excess of a specific volume," was a rule "that humans in analogous situations . . . have [applied] for decades, if not centuries," so the claim was non-inventive.

Moreover, the steps of the '227 patent can occur in any order, and can take place on any hardware or software. ECF No. 1-1 at 52, 54. "[S]imply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does

---

[6] Symantec also concedes that the '227 patent is not even directed to virus scanning in particular. ECF No. 153 at 21.

not meaningfully limit claim scope for purposes of patent eligibility." CLS Bank Int'l v. Alice Corp., 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) aff'd Alice Corp., 134 S. Ct. at 2347. Like the patent found invalid in Fairwarning, 839 F.3d at 1094, the patent's use of a generic computer or computer program, such as the compressor/decompressor, is the only improvement in the technological process. See also id. at 1095 ("While the claimed system and method certainly purport to accelerate the process . . . the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."). In sum, the limitations and their ordered combination "merely graft generic computer components onto otherwise-ineligible method claims." Id. at 1096. Each claim of the patent is easily boiled down to a system which passes files sequentially to modifying scanners, and all at once to read only scanners. The claims and their limitations do nothing to "differentiate [this] process from ordinary mental processes," and they are therefore not inventive. Id. at 1096-97. Moreover, the patent does not even appear to claim any particular improvement on the prior art. Id.; Bascom Global Internet Servs, Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1342 (Fed. Cir. 2016) (explaining that when assessing inventiveness, the court should look at the ordered combinations of limitations individually and collectively and compare the collective claims to the prior art). The Court concludes the patent is not inventive and therefore invalid.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Symantec's motion to strike is GRANTED and the Court strikes the portion of Zscaler's brief regarding Claim 5.  Otherwise, Zscaler's motion to dismiss is GRANTED.  The motion to dismiss is granted with prejudice.  Papst Licensing GmbH, 193 F. Supp. 3d at 1095 ("Because the asserted claims are directed to patent-ineligible subject matter, a defect which cannot be cured through amendment of a complaint, Plaintiff's claims for infringement are dismissed with prejudice." (emphasis omitted)); see also Procter & Gamble Co. v. QuantifiCare Inc., No. 17-CV-03061-LHK, 2017 WL 6497629, at *28 (N.D. Cal. Dec. 19, 2017) (granting with prejudice Alice motion to dismiss).

**IT IS SO ORDERED.**

Dated:  March 23, 2018

_____
JON S. TIGAR
United States District Judge