**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>                Plaintiff,<br><br>   v.<br><br>ZSCALER, INC.,<br><br>                Defendant. | Case No. 3:17-cv-04426-JST |

**SUPPLEMENTAL BRIEF REGARDING THE SUFFICIENCY OF ZSCALER'S
INVALIDITY CONTENTIONS**

The Honorable Judge Maria-Elena James
San Francisco Courthouse
Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re:    Symantec Corporation v. Zscaler, Inc., Case No. 3:17-CV-04426-JST

Dear Judge James:

      Under the Court's March 20, 2018 Order, Plaintiff Symantec Corporation respectfully submits this supplemental brief addressing Zscaler's deficient invalidity contentions. Dkt. No. 168. This brief provides a "detailed analysis" of seven representative invalidity charts[1] highlighting Zscaler's failure to comply with Patent Local Rule 3-3(c)'s new requirement of explaining "how" a reference discloses each claim limitation. *Id.* Zscaler's invalidity charts fail this requirement because they do not explain "how" Zscaler contends each reference discloses each limitation of the claims.

      Symantec thus requests that the Court order Zscaler to supplement its invalidity charts to include explanatory prose of "how" each reference discloses each individual limitation of the asserted claims. Specifically, Symantec requests that the Court order Zscaler to include, for each claim element, explanatory prose that identifies the specific concept in a reference Zscaler

---

[1] In light of Judge Tigar's March 23, 2018 ruling regarding the validity of the '227 and '959 Patents under 35 U.S.C. § 101, Symantec does not address charts related to those patents in this supplemental brief. *See* Dkt. No. 173.

The Honorable Judge Maria-Elena James         - 2 -

intends to map to each individual limitation (e.g., "Reference A's concept B teaches limitation C."). This explanation should go beyond Zscaler merely adding an assertion that the block quotes from a reference disclose the entirety of a claim limitation, as that type of supplementation would not provide notice of either the specific aspect of the reference Zscaler is relying on for each particular claim element or Zscaler's theory for how the quote discloses the element.[1] Without such an explanation, Symantec and the Court will be left to guess at Zscaler's invalidity theory, creating the problems later in the case that Symantec identified in its Joint Letter Brief. Dkt. No. 166, pp. 2-3.

### I.     Zscaler's Invalidity Charts Are Deficient Under the New "How" Requirement of Patent Local Rule 3-3(c).

Invalidity charts under amended Rule 3-3(c) must satisfy two requirements. First, each chart must specify "where" in each reference a limitation is found. The pre-amendment version of Rule 3-3(c) only required a chart to identify "where"—and not "how"—a limitation is found in a reference. But even under the "where" requirement, a court in this district found reliance on unexplained block quotations—exactly like those used throughout Zscaler's charts—insufficient and ordered explanation of the quotes. *Slot Speaker Techs. v. Apple, Inc.*, No. 12-cv-01161-HSG (DMR), 2017 WL 235049, at *4 (N.D. Cal. Jan. 19, 2017). Indeed, an example of the invalidity charts held deficient in *Slot Speaker* is reproduced below:

---

[1] Symantec does not contend that Rule 3-3(c) requires Zscaler to explain individual quotations or screenshots cited in Zscaler's charts, but that Zscaler must provide some explanation for each claim limitation of where and how Zscaler contends the reference discloses the claim element.

The Honorable Judge Maria-Elena James  - 3 -

| '483 Patent Claim Limitation | Anderson |
|---|---|
| [1C] a sound reflecting surface facing the drive unit and substantially parallel with the mounting surface; and | Anderson discloses a sound reflecting surface facing the drive unit and substantially parallel with the mounting surface.<br><br>*See, e.g.,*<br><br>"The invention generally comprises of a cover 10, a base or acoustic reflector 12, and a speaker 14. **The speaker is attached to a support plate 16, which in turn is mounted within the cover 10. A plurality of bushings 18 position the support plate a measured distance above the base 12. The speaker 14 is positioned upon the support plate 16 to direct sound downwardly toward and in the vicinity of the generally circular base 12**." (Anderson at 2:51-59 (emphasis added)).<br><br>"**The sides of the base facing the speaker are angled away from the speaker to near the surface upon the assembly rests, and are composed of an acoustically reflective material that sound is radially reflected in all horizontal directions off of the base 12**." (Anderson at 2:60-64 (emphasis added)).<br><br>. . .<br><br>Although the preferred embodiment of the invention includes a conial recess in the top of the base 12, a variety of other configurations for the base 12 are possible. **Alternative embodiments of the top of the base 12 include semispherical recess, a flat top, a pointed convex conical top, and a pointed convex conical top with a more acute angle to the upper cone surface than the general conical angle of the base 12. Moreover, the configuration of the base 12 is not limited to strict conical sides, but instead may use any configuration that allows sound to be radially reflected in generally all horizontal directions away from the speaker assembly.** Additionally, the assembly may be constructed to direct sound from the speaker in just a few of the circumferential directions." (Anderson at 5:18-21 (emphasis added)). |

*Id*.

  Second, as of the January 2017 amendment to Rule 3-3(c), each chart must now *also* explain "how" a reference discloses each limitation. Patent L.R. 3-3(c) ("A chart identifying specifically *where **and how*** in each alleged item of prior art each limitation of each asserted claim is found") (emphasis added). This "how" requirement is the focus of this supplemental brief, as Zscaler's charts do not meet this requirement.

  Each of the seven representative claim charts analyzed below is deficient and illustrates defects that permeate all of Zscaler's invalidity charts. Like the deficient charts in *Slot Speaker*, Zscaler's charts—as seen in the example excerpt below—rely on block quotes copied from references without any explanation of *how* the block quotes disclose the claim limitations:

The Honorable Judge Maria-Elena James        - 4 -

| 1.a | identifying, by a message monitoring system (MMS), an abstract data structure derived from preselected data to be protected from traveling across a network, the abstract data structure not revealing data elements of the preselected data to be protected | Techniques for controlling distribution of information from a secure domain by automatically detecting outgoing messages which violate security policies corresponding to the secure domain. Abstract.<br><br>Semantic models are constructed for one or more message categories and for the outgoing messages. The semantic model of an outgoing message is compared with the semantic models of the message categories to determine a degree of similarity between the semantic models. Abstract.<br><br>In particular, the present invention relates to the application of natural language processing (NLP) and information retrieval techniques to classification of information based on its content, and controlling the distribution or dissemination of the information based on the classification. 1:44-48.<br><br>In particular, communication techniques such as electronic mail (E-Mail), electronic faxes, and the like, have made the networks of these organizations susceptible to information leakage problems whereby sensitive information is transmitted to unauthorized users by processes/entities with legitimate access to the information. 1:58-63. |

Ex. 1 at 2. In fact, Zscaler's invalidity contentions are even *more* deficient than those in *Slot Speaker*, because Zscaler did not "highlight" text for many claim elements (as can be seen from the example above). If the *Slot Speaker* charts were deficient under the "where" requirement of pre-amendment version of Rule 3-3(c), then Zscaler's charts must necessarily fail under the added "how" requirement of that rule.

As explained at the end of this brief, Zscaler's charts stand in stark contrast to Symantec's infringement contentions, which provide detailed explanations for each claim limitation of where and how Zscaler's system infringes each claim limitation in compliance with the requirements of Rule 3-1(c).

          a. **Zscaler's Invalidity Charts for the '036 Patent Are Deficient**

             i. **Zscaler's Chart for the SureView System Is Deficient**

Zscaler's invalidity chart for the SureView system does not even come close to satisfying the "how" requirement of Rule 3-3(c). Ex. 2. The chart relies exclusively on quotes and screenshots from alleged SureView documentation and does not provide any explanation to comply with the "how" requirement. This lack of explanation forces Symantec to guess at Zscaler's invalidity theory for the SureView system and allows Zscaler to avoid committing to any particular invalidity theory, effectively reserving the right to later provide *some* theory in its expert report based on the quotes and screenshots.

As a specific example, Claim 1 is directed to a "method for detecting extrusion of obfuscated [e.g., encrypted or compressed] content." *Id.* at 2. The claim recites nine steps, including what Zscaler's chart calls Claims "1.a," "1.b," "1.c.ii," "1.e," and "1.f." *Id.* at 2-11. Claim 1.a recites "comparing signatures of programs launched on a computer with signatures of known obfuscation tools." *Id.* at 2. Zscaler's SureView claim chart for Claim 1.a refers to the

The Honorable Judge Maria-Elena James            - 5 -

chart for Claim 1.b.  *Id.*   The Claim 1.b chart, however, includes several screenshots from documentation for the SureView system, ***none of which mention "signatures of programs," "signatures of known obfuscation tools," or "comparing" such signatures***.  *Id.* at 2-6.  Indeed, the first screenshot in Claim 1.b does not appear to have any relevance to those limitations:

> Oakley's SureView™ software is installed on every workstation in the organization. An agent-based monitoring approach also allows SureView™ to collect data pre-encryption or post-decryption, providing you with complete visibility.

*Id.* at 2.  The relevance of the other screenshots in Claim 1.b to the Claim 1.a limitations is equally elusive.  So, what is Zscaler relying on for each of the Claim 1.a limitations?  How do the screenshots disclose those limitations?

The chart for Claim 1.b. also is deficient.  *Id.* at 2-6.  Claim 1.b recites "detecting launching of an obfuscation tool on the computer responsive to a signature of a program launched on the computer matching a signature of a known obfuscation tool."  *Id.* at 2.  Again, the chart simply includes screenshots without any explanation of how the screenshots apply to the limitations.  The screenshot below is one example from the Claim 1.b chart.

> TOTAL COVERAGE
> • Communication channels
> • Web & traditional applications
> • Data transfer channels
> • Media channels
> • Encryption channels

*Id.* at 5.  Symantec is left to guess as to how Zscaler intends to apply the screenshots to the claim limitations.  For example, what in the cited screenshots is Zscaler relying on for "detecting launching of an obfuscation tool" and detecting launching of that tool "responsive to a signature of a program launched on the computer matching a signature of a known obfuscation tool?"

The charts for Claims 1.c.ii, 1.e, and 1.f also lack any explanations of how Zscaler contends SureView discloses each claim limitation.  Claim 1.c.ii recites "interrogating the file to glean a context in which the word/phrase is used."  *Id.* at 9-10.  Zscaler's chart includes three screenshots, none of which indicate how Zscaler alleges the screenshots disclose the claim limitation.  For instance, how does "[i]gnore innocent visits to vacation websites during lunch

The Honorable Judge Maria-Elena James     - 6 -

breaks" disclose this limitation? *Id.* at 10. What is Zscaler relying on for "interrogating the file" to glean "a context in which the word/phrase is used?" Claims 1.e and 1.f respectively recite "computing a signature of the output file" and "using the signature of the output file to prevent extrusion of obfuscated sensitive content within the output file." *Id.* at 10-11. Zscaler's charts include unexplained screenshots that do not mention "a signature of the output file," let alone either of the recited actions of "computing" the signature or "using" the signature to "prevent extrusion." *Id.* at 10-12. As such, Symantec is left to guess as to how Zscaler contends the SureView system discloses those limitations, including what, within all of the screenshots, Zscaler is relying on for the claimed "signature."

The charts for the dependent claims do not fare any better. For example, Claim 2.a recites "sending the signature of the output file to a data leakage detection engine for use in extrusion detection." *Id.* at 13. Zscaler's chart merely states "*See* claim 1.f." *Id.* But, as discussed above, Zscaler does not explain in Claim 1.f what it is relying on for the claimed "signature." Regardless, Claim 2.a additionally requires "sending the signature" to "a data leakage detection engine for use in extrusion detection." *Id.* Zscaler's screenshots in its claim chart do not have any apparent relevance to these additional limitations. *Id.* at 11-12. Indeed, they do not describe "sending" a "signature" to anything, let alone a "data leakage detection engine." Merely referring back to unexplained quotes in Claim 1.f leaves Symantec guessing as to Zscaler's theory of how those quotes apply to the limitations in Claim 2.a.

As another example, Zscaler's chart for Claim 5 again leaves Symantec guessing as to Zscaler's invalidity theory. *Id.* at 16-17. There are at least two problems with Zscaler's chart for Claim 5. First, given Claim 5's dependency on Claim 4, Zscaler's chart states "*See* claim 4." *Id.* at 16. But Zscaler's chart for Claim 4 is ***entirely blank***:



*Id.* at 15. Zscaler has not provided a theory for the limitations of Claim 4, leaving it to Symantec to guess at whether Zscaler concedes that these limitations are not disclosed or whether Zscaler will later attempt to inject a new theory into the case. Second, Zscaler's chart does not explain how the screenshots apply to the many limitations in each of the three claim steps.

| 5 | The method of claim 4 wherein the analysis comprises:<br><br>computing a signature of the extracted attachment;<br><br>comparing that signature to signatures of known sensitive information; and<br><br>in response to the signature of the extracted attachment matching a signature of known sensitive information thereby indicating an extrusion attempt, blocking the extrusion attempt. | *See* claim 4 and claim 1.e and 1.f. *see also:*<br><br>• Monitor and enforce in real-time by checking documents, email, webmail, attachments, printed files, and encrypted files as soon as the employee creates or views the information<br><br>• Monitor all web activity: sites visited, files uploaded and downloaded, and webmail use<br>• Monitor IM activity, capturing IP and customer data leakage<br>• See encrypted information in plain text pre-encryption or post-decryption<br>• Selectively block access to removable media such as USB thumbdrives<br>• Know when documents are modified, moved, or attached and sent via email<br>• View policy violations using our patent-pending Replay In Context™<br>• And more |
|---|---|---|

*Id.* at 16. For instance, the screenshots say nothing about "computing a signature of the extracted attachment" or "comparing that signature to signatures of known sensitive information." What is Zscaler's theory as to how the SureView system discloses those limitations?

### ii. Zscaler's Chart for the Peled '159 Reference Is Deficient

Zscaler's claim chart for the Peled '159 reference violates Rule 3-3(c) because it also relies exclusively on quotes from the Peled '159 reference and does not include any explanation for "how" Zscaler alleges the claim elements are disclosed. Ex. 3. For example, the chart for Claim 1.a contains 34 citations to different paragraphs of the Peled '159 reference without a single explanation of how Zscaler contends the block quotes disclose any limitation of Claim 1.a. *Id.* at 2-9. Zscaler's naked reliance on quotes makes it difficult, if not impossible, for Symantec to understand what Zscaler actually contends discloses each limitation of Claim 1.a. For instance, Claim 1.a recites "comparing signatures of programs launched on a computer with signatures of known obfuscation tools." *Id.* at 2. However, the relevance of the below quote to the limitations of Claim 1.a is not apparent:

> Detection of tampering attempts can be based on either logical indications or statistical indications. Logical indications may comprise detection of one or more un-certified add-in, especially add-ins that are hooked to windows events, unauthorized existence of debugging tools, virtual machines, software emulators, software "traps" and interrupting. Statistical indications may comprise quantitative indications regarding unusual or suspected activities, that are performed by a certain user or on certain workstation within a certain timeframe or abnormal volume or distribution of certain activities, such as inputs to a configuration field, clocking on certain controls, etc. 14:53-64.

*Id.* at 6. Does Zscaler contend that some portion of the quotes discloses "signatures of programs" or "signatures of known obfuscation tools?" If so, what particular concept from the quotes discloses those elements?

The charts for the dependent claims also are deficient. Dependent Claim 2 recites "sending the signature of the output file to a data leakage detection engine for use in extrusion

The Honorable Judge Maria-Elena James    - 8 -

detection." *Id.* at 32. The chart for Claim 2 includes only block quotes with no apparent relevance to any of those limitations. *Id.* at 32-34. The following is an example of one such unexplained block quote:

> In a preferred embodiment of the present invention the client-side software includes components operable to control screen capture, control clipboard, and control output (print/save/auto-save/fax) functionality. In addition, the client-side software includes a component operable to control or prevent debugging or circumvention techniques from thwarting the control. 14:28-34.

*Id.* at 33. What is the claimed "signature of the output file" and how is it sent "to a data leakage detection engine for use in extrusion detection?"

Simply put, Zscaler's deficient claim charts obfuscate Zscaler's theory of "how" the claim elements of the '036 Patent are "found" in the cited references. These defects typify deficiencies in Zscaler's other charts for the '036 Patent.

### b. Zscaler's Invalidity Charts for the '498 Patent Are Deficient

Zscaler's invalidity chart for the Liddy reference also does not satisfy the "how" requirement of Rule 3-3(c). Ex. 1. Like the SureView chart discussed above, the Liddy reference chart relies exclusively on block quotations from the patent without any explanations of how the quotations disclose the claim limitations.

Zscaler's chart for Claim 1 of the '498 Patent does not explain how Zscaler contends each limitation is disclosed. Claim 1.a, for instance, recites "identifying, by a message monitoring system (MMS), an abstract data structure derived from preselected data to be protected from traveling across a network, the abstract data structure not revealing data elements of the preselected data to be protected." *Id.* at 2. Zscaler's claim chart contains 14 lengthy block quotations without even a sentence of explanation of how those quotations disclose any limitation of Claim 1.a. *Id.* at 2-5. One such block quote is excerpted below:

> FIG. 4 depicts a flow chart 70 showing various steps performed by the present invention for constructing a semantic model for a message category (step 52 in FIG. 3)… During the first stage, the present invention uses natural language processing and information retrieval techniques to generate a set of text segments that are closely related to the meaning of the message category as described by the message category descriptive text provided by the user…During the second stage, the present invention extracts structured knowledge representation for the message category from the set of text segments retrieved in stage one…The knowledge representations extracted from the text segments constitute a semantic model for the corresponding message category. 6:15-33.

*Id.* at 3-4. What is Zscaler relying on as the claimed "abstract data structure" in that block quote? Is Zscaler relying on the "semantic model for a message category," the "text segments,"

The Honorable Judge Maria-Elena James        - 9 -

the "message category," the "message category descriptive text," or something else entirely? How does Zscaler contend those disclosures meet the limitation that the abstract data structure "not reveal[] data elements of the preselected data to be protected?" And, what is Zscaler relying on as the "preselected data to be protected?" Symantec is forced to guess at all of these questions, while Zscaler avoids its Rule 3-3(c) obligations. This lack of explanation applies to each limitation of the chart for Claim 1.

Zscaler's charts for the dependent claims also lack explanations of how the Liddy reference discloses each claim limitation. For example, Claim 16 depends from Claim 13 and recites that the policy of Claim 13 "includes a specification of the data and a network location of the data." *Id.* at 17. Although Claim 16 recites additional limitations beyond those recited in Claim 13, Zscaler's claim chart merely refers back to Claim 13 without any further explanation of how the block quotes in Claim 13's chart apply to Claim 16's limitations. *Id.* And, Claim 13's chart contains 13 explained block quotations that each lacks disclosures of a policy that includes "a specification of the data" and a "network location of the data." *Id.* at 14-17. The following is a representative example of Zscaler's unexplained block quotes:

> The boundary controller may prohibit distribution of the outgoing message if the security clearance level of the message category is higher (or not compatible) with the security clearance levels of either the sender of the message or the recipients of the message. The outgoing message may be flagged as violating a security policy. 10:3-8.

*Id.* at 16. What does Zscaler contend discloses the "specification of data" and the "network location of the data" in the security policy? These same defects exist for dependent claims that recite similar concepts, such as Claims 31 and 32. Indeed, Zscaler's claim chart for ***Claim 32*** merely self-references ***Claim 32 itself***, leaving Symantec to wonder if Zscaler even has a theory for this claim:



| 32 | The system defined in claim 29 wherein the network location comprises an IP address of a server | *See* claim 32 |

*Id.* at 22.

The same general lack of explanation of how Liddy discloses each limitation exists in other dependent claims too. For example, Zscaler's chart for Claim 21 is unclear as to what concept in the block quotes Zscaler is relying on for the limitation of "a plurality of exit points of the network." *Id.* at 18. Zscaler provides five paragraphs of unrelated block quotes that reference various computers and networks without any explanation of how those quotes disclose each limitation of Claim 21. *Id.* As another example, Claim 36 recites that the "policy management system and the message management system are incorporated into the same logical system," but Zscaler's claim chart is unclear as to what Zscaler is relying on as the "policy management system" and the "message management system," let alone how the three block quotations disclose that those elements are "incorporated into the same logical system." *Id.* at 23.

The Honorable Judge Maria-Elena James        - 10 -

Zscaler's deficient claim charts do not provide notice of "how" Zscaler alleges the claim elements of the '498 Patent are "found" in the cited references. These defects typify deficiencies in Zscaler's other charts for the '498 Patent.

### c. **Zscaler's Invalidity Charts for the '113 Patent Are Deficient**

#### i. **Zscaler's Chart for the Hill Reference Is Deficient**

Zscaler's invalidity chart for the Hill reference also does not satisfy the "how" requirement of Rule 3-3(c). Ex. 4. Zscaler's chart for the Hill reference relies exclusively on quotes from the Hill reference and fails to provide any prose explanation of "how" Zscaler alleges the claim elements are disclosed.

For example, Claim 1 recites "storing corresponding data representative of a correspondence between subsets of said attack signature profiles and said network objects such that each network object has a corresponding stored subset of attack signature profiles and more than one subset of attack signature profiles corresponds to said network objects." Zscaler relies exclusively on quotes and figures from Hill without providing any explanation. *Id.* at 8-13 (excepts shown below).

| storing corresponding data representative of a correspondence between subsets of said attack signature profiles and said network objects such that each network object has a corresponding stored subset of attack signature profiles and more than one subset of attack signature profiles corresponds to network objects; | Abstract ("A network status display (42) displays multi-dimensional attack status information representing the attack (92) in a two dimensional image to indicate the overall nature and severity of the attack (92). The network status display (42) also includes a list of recommended actions (112) for mitigating the attack."). <br><br> *Hill*, Figure 3 ("SECURITY EVENT TYPE," "LOCATION IDENTIFIERS," "SIMULATED ATTACK"). <br><br> *Hill*, Figure 6. <br><br> *Hill*, Figure 7. <br><br> *Hill*, 2:3-3:12 ("In one embodiment, the method comprises the steps of training the security system to respond to a plurality of training signatures, each of the training signatures representing one of a plurality of simulated attacks, receiving a first attack signature, the first attack signature being configured to characterize a first one of the plurality of attacks, comparing the first attack signature to each of the training signatures to determine which of the training signatures most closely matches the first attack signature, displaying attack status information in a network status display in response to the first attack signature and a most closely matching training signature and adapting the security system to respond to a second one of the plurality of attacks, the second attack being characterized by a second attack signature that resembles the first attack signature."). |
|---|---|

Symantec is left to guess "how" Zscaler alleges this element is disclosed by Hill, for example, what Zscaler contends is "corresponding data," "attack signature profiles," and "subsets" as recited by Claim 1.

Claim 1 further recites "in response to detecting said data addressed to said network object, accessing a subset of attack signature profile corresponding to said network object based on said correspondence data." Again, Zscaler relies exclusively on quotes and figures from Hill

The Honorable Judge Maria-Elena James        - 11 -

without providing any explanation.  *Id.* at 16-19 (excerpts shown below).

| d. | in response to detecting said data addressed to said network object, accessing a subset of attack signature profiles corresponding to said network object based on said correspondence data; and | *Hill*, Abstract ("The security system (20) is adapted to respond to a subsequent attack that has a subsequent Signature most Closely resembling the attack signature 94."). <br><br> *Hill*, Figure 5. <br><br> *Hill*, Figure 7. <br><br> *Hill*, 2:3-3:12 ("In one embodiment, the method comprises the steps of training the security system to respond to a plurality of training signatures, each of the training signatures representing one of a plurality of simulated attacks, receiving a first attack signature, the first attack signature being configured to characterize a first one of the plurality of attacks, comparing the first attack signature to each of the training signatures to determine which of the training signatures most closely matches the first attack signature, displaying attack status information in a network status display in response to the first attack signature and a most closely matching training signature and adapting the security system to respond to a second one of the plurality of attacks, the second attack being characterized by a second attack signature that resembles the first attack signature."). <br><br> *Hill*, 3:17-36 ("The present invention, in another embodiment, provides a dynamic network security system for responding to a security attack on a computer network.  The computer network has a multiplicity of computer nodes. The system comprises a plurality of security |

Symantec is left to guess "how" Zscaler alleges this element is disclosed by Hill, for example, "at least one attack signature profile included in said subset corresponding to said network object."

### ii.  Zscaler's Chart for the Shwed Reference Is Deficient

Zscaler's invalidity chart for the Shwed reference also does not satisfy the "how" requirement of Rule 3-3(c).  Ex. 5.  Zscaler's chart for the Shwed reference relies exclusively on quotes from the Shwed reference and again fails to provide any prose explanation of "how" Zscaler alleges the claim elements are disclosed.

For example, Claim 1 recites "storing corresponding data representative of a correspondence between subsets of said attack signature profiles and said network objects such that each network object has a corresponding stored subset of attack signature profiles and more than one subset of attack signature profiles corresponds to said network objects."  Zscaler relies exclusively on quotes and figures from Shwed without providing any explanation.  *Id.* at 9-13 (excepts shown below).

The Honorable Judge Maria-Elena James        - 12 -

| storing corresponding data representative of a correspondence between subsets of said attack signature profiles and said network objects such that each network object has a corresponding stored subset of attack signature profiles and more than one subset of attack signature profiles corresponds to network objects; | *Shwed*, Abstract ("A set of security rules are defined in a high level form and are translated into a packet filter code."). <br><br> *Shwed*, Figure 3. <br><br> *Shwed*, Figure 14. <br><br> *Shwed*, Figure 15. <br><br> *Shwed*, 2:1-4 ("A still further object of the invention is to provide a generic packet filter module which is controlled by a set of instructions to implement a given security policy at a node to accept (pass) or reject (drop) the packet."). <br><br> *Shwed*, 2:13-21 ("the method comprising the steps of generating, in at least one computer in the network, a definition of each aspect of the network controlled by a security rule; generating said security rule, in said computer, in terms of said aspect definitions, for controlling at least one of said aspects; converting said security rule into a set of filter language instructions for controlling operation of a packet filtering module which controls |

Symantec is left to guess "how" Zscaler alleges this element is disclosed by Shwed, for example, "at least one attack signature profile included in said subset corresponding to said network object."

Similarly, Claim 1 recites "in response to detecting said data addressed to said network object, accessing a subset of attack signature profile corresponding to said network object based on said correspondence data." Again, Zscaler relies exclusively on quotes and figures from Shwed without providing any explanation. *Id.* at 16-17 (excerpts shown below).

| in response to detecting said data addressed to said network object, accessing a subset of attack signature profiles corresponding to said network object based on said correspondence data; and | *Shwed*, Figure 5. <br><br> *Shwed*, Figure 6. <br><br> *Shwed*, Figure 14. <br><br> *Shwed*, Figure 15. <br><br> *Shwed*, 2:56-60 ("said module reading said executing instructions for a packet filtering operation; storing the results in a storage device; said module reading and executing instructions and utilizing said stored results for operating said packet filter module to accept or reject the passage of said packet in said network."). <br><br> *Shwed*, 6:17-22 ("Control then passes to block 410 in which code is generated to match the rule services that were chosen. The rule services have been defined previously and are stored within the system or, if not defined, will be defined at the time the security rule regulating the service is entered into the system."). <br><br> *Shwed*, 7:18-21 ("In block 524, the packet is compared with the security rule and a determination is made as to whether or not the packet matches the rule.") <br><br> *Shwed*, 8:50-55 ("FIG. 9 shows logical operation 704 in greater detail. The logical operation starts at block 902 and control passes to block 904 in which the first value is obtained from the memory 906. In block 908 a second value is obtained from the memory and the logical operation is performed in block 910."). |

Symantec is left to guess "how" Zscaler alleges this element is disclosed by Shwed, for example, "at least one attack signature profile included in said subset corresponding to said network object."

Zscaler's deficient claim charts do not provide notice of "how" Zscaler alleges the claim

The Honorable Judge Maria-Elena James        - 13 -

elements of the '113 Patent are "found" in the cited references. These defects typify deficiencies in Zscaler's other charts for the '113 Patent.

### d. Zscaler's Invalidity Charts for the '116 Patent Are Deficient

Zscaler's invalidity chart for the Etheridge reference also does not satisfy the "how" requirement of Rule 3-3(c). Ex. 6. Zscaler's chart for the Etheridge reference relies exclusively on quotes from the Etheridge reference and fails to provide any prose explanation of "how" Zscaler alleges the claim elements are disclosed.

For example, Claim 5 (the only asserted claim from the '116 Patent) recites "receiving a plurality of incoming message packets by a security gateway coupled to said networked device." Zscaler, again, relies exclusively on quotes and figures from Etheridge without providing any explanation. Notably, none of the disclosure from Etheridge cited by Zscaler recites the term "gateway" and Symantec is left to guess what aspects of Etheridge Zscaler contends are a "security gateway coupled to said networked device." *Id.* at 3-6.



Claim 5 also recites "dynamically defining an attack defense processing rule as a function of the determined plurality of indicator parameters" and Zscaler's chart merely cites to two figures from the Etheridge patent without any explanation. *Id.* at 20-21 (excerpt shown below).

The Honorable Judge Maria-Elena James        - 14 -



What does Zscaler allege is the "attack defense processing rule?" How does Zscaler allege it is "dynamically defined" or "a function of the determined plurality of indicator parameters?" Symantec can only guess.

Zscaler's deficient claim charts do not provide notice of "how" Zscaler alleges the claim elements of the '116 Patent are "found" in the cited references. These defects typify deficiencies in Zscaler's other charts for the '116 Patent.

### e. Zscaler's Invalidity Charts for the '543 Patent Are Deficient

Zscaler's invalidity chart for the Lee reference also does not satisfy the "how" requirement of Rule 3-3(c). Ex. 7. Zscaler's chart for the Lee reference relies on quotes from the Lee reference and fails to provide an explanation of "how" Zscaler alleges the claim elements are disclosed.

For example, Claim 1 recites "creating an extracted malicious code packet including said malicious code signature." Zscaler relies exclusively on quotes and figures from Lee without providing any explanation. *Id.* at 15-18 (excepts shown below).

| creating an extracted malicious code packet including said malicious code signature; and | *Lee*, 211 ("The user may download the emulator, run it locally, and **send the events back for analysis**.") (emphasis added) |
|---|---|
| | *Lee*, 216 ("A virus usually transfers the control of the execution back to the original program after it accomplishes its goal. Since the emulator executes every relevant instruction, it can always detect the 'return control' point. Thus, it can replace the portion of infected program with the correct binary image in memory, and truncate the attached malicious codes, as long as the virus is not destructive[4]. For essentially the same reason, the **emulator can extract the sequence of instructions which forms the signature of the virus. The signature can then be added to the virus pattern data base** of the accompanied scanner.") (emphasis added) |

Symantec is left to guess "how" Zscaler alleges this element is disclosed by Lee, for example,

The Honorable Judge Maria-Elena James         - 15 -

"how" Lee discloses "creating an extracted malicious code packet" that "includ[es] said malicious code signature" and specifically what Zscaler contends in that "packet" is the "malicious code signature."

Zscaler's deficient claim charts do not provide notice of "how" Zscaler alleges the claim elements of the '543 Patent are "found" in the cited references. These defects typify deficiencies in Zscaler's other charts for the '543 Patent.

## II. Symantec's Infringement Contentions Included Explanations Complying with the "How" Requirement of Rule 3-1(c).

Zscaler's invalidity charts stand in stark contrast to Symantec's infringement charts. Symantec *provided detailed prose explanations* in its infringement contentions to comply with the corresponding "how" requirement of Rule 3-1(c) and requests that the Court order Zscaler to do the same for its invalidity contentions. For example, in Symantec's '116 Patent claim chart for Claim 5, for element [5a] "receiving a plurality of incoming message packets by a security gateway coupled to said networked device," Symantec states that "Zscaler Enforcement Nodes are *security gateways coupled to Zscaler customer devices* that *receive message packets sent to and from Zscaler customer devices*" and then cites to supporting Zscaler documentation. Dkt. No. 174, Ex. D at 163-64 (emphasis added) (shown below).

| [5a] receiving a plurality of incoming message packets by a security gateway coupled to said networked device; | The Zscaler Cloud Security platform performs receiving a plurality of incoming message packets by a security gateway coupled to said networked device at least by "the platform provid[ing] pervasive security for an organization's users, scanning all inbound and outbound traffic in real time to ensure compliance with corporate policies and protection from the latest threats" where "Zscaler's multitenant architecture ensures that organizations benefit from the 'network effect'" of "Zscaler immediately updat[ing] its signatures, thus protecting all users across its network" when "a new threat is identified for any one of Zscaler's . . . customers." ZSC_SYM_00001429 at 4.<br><br>For example, Zscaler Enforcement Nodes are security gateways coupled to Zscaler customer devices that receive message packets sent to and from Zscaler customer devices. "Zscaler Enforcement Nodes (ZENs) are full-featured inline internet security gateways that inspect all traffic bi-directionally for malware and enforce security and compliance policies." ZSC_SYM_00001429 at 7. "An organization can forward its traffic to any ZEN in the world or use the advanced geo-IP capability of Zscaler to direct its users' traffic to the nearest ZEN." ZSC_SYM_00001429 at 7. "Packet data is held in memory for inspection and then, based on policy, is either forwarded or dropped." ZSC_SYM_00001429 at 7. |
|---|---|

Similarly, in Symantec's '113 Patent claim chart for Claim 1, for element [1a] "storing a list of attack signature profiles descriptive of attack signatures associated with said network intrusion attempts," Symantec states that the "Zscaler Cloud Security Platform stores security policies that describe characteristics of malicious traffic and signatures of malicious content that correspond to 'attack signature profiles descriptive of attack signatures with said network intrusion attempts'" and that "[s]everal aspects of the Zscaler Cloud Security Platform implement these policies and signatures," and then also provides an exemplary list. Dkt. No. 174, Ex. A at 16 (shown below).

The Honorable Judge Maria-Elena James     - 16 -

| [1a] storing a list of attack signature profiles descriptive of attack signatures associated with said network intrusion attempts; | The Zscaler Cloud Security platform performs storing a list of attack signature profiles descriptive of attack signatures associated with said network intrusion attempts at least by "[t]he platform provid[ing] pervasive security for an organization's users, scanning all inbound and outbound traffic in real time to ensure compliance with corporate policies and protection from the latest threats" including providing "the 'network effect'" where "Zscaler immediately updates its signatures, thus protecting all users across its network" when "a new threat is identified for any one of Zscaler's . . . customers." ZSC_SYM_00001429 at 4. <br><br> For example, the Zsaler Cloud Security Platform stores security policies that describe characteristics of malicious traffic and signatures of malicious content that correspond to "attack signature profiles descriptive of attack signatures with said network intrusion attempts." Several aspects of the Zscaler Cloud Security Platform implement these policies and signatures. <br><br> The Zscaler Cloud Security Platform performs "signature based anti-malware protection" (*see e.g.*, ZSC_SYM_00001429 at 22), "behavioral analysis" (*see e.g.*, ZSC_SYM_00001429 at 24-25), "URL Filtering" (*see e.g.*, ZSC_SYM_00001429 at 28), and the "firewall" (*see e.g.*, ZSC_SYM_00001429 at 29-31) and protects against "virus, spyware, and other kinds of malware" signatures used by the "malware protection" functionality of the Zscaler Cloud Security Platform (*see e.g.*, ZSC_SYM_00001429 at 22), "suspicious content within a page (injected scripts, vulnerable ActiveX, zero-pixel iFrames, and much more) as well as domain information to calculate a Zscaler PageRisk score" used by the "advanced threats protection" functionality of the Zscaler Cloud Security Platform (*see e.g.*, ZSC_SYM_00001429 at 23), "suspicious Windows executables and Windows libraries downloaded from suspicious URLs" and the "rules" used by the "behavior analysis" functionality of the Zscaler Cloud Security Platform to identify malicious content (*see e.g.*, ZSC_SYM_00001429 at 24-25), and includes "policy rules" specifying "harmful web content" used by "URL filtering" functionality of the Zscaler Cloud Security Platform (*see e.g.*, ZSC_SYM_00001429 at 28), the "rules" used by the "firewall" and "next generation firewall" functionality of the Zscaler Cloud Security Platform to block malicious content (*see e.g.*, ZSC_SYM_00001429 at 29-31), and "DLP policy" and "DLP dictionaries" used to detect and block "unauthorized or sensitive data leaving the customer's organization" by the "data loss prevention" functionality of the Zscaler Cloud Security Platform (*see e.g.*, ZSC_SYM_00001429 at 37). |

As noted above, Zscaler's invalidity charts do not include these prose explanations (which Symantec provided to comply with the "how" requirements of Rule 3-1(c)) and fail to satisfy the "how" requirement of Rule 3-3(c).

### III.     Conclusion

Amended Rule 3-3(c) requires more of Zscaler. Zscaler's charts are nothing more than placeholders indicating that Zscaler intends to later make an invalidity argument using the extensive unexplained quotes in those charts. Absent an explanation of how each reference disclose each claim limitation, Zscaler's charts do not provide notice of Zscaler's invalidity theories. Symantec requests that the Court require Zscaler to supplement its invalidity charts to comply with the "how" requirement of Rule 3-3(c). *See supra*, pp. 1-2.

The Honorable Judge Maria-Elena James         - 17 -

                              Dated:  March 30, 2018

                              BAKER BOTTS LLP

By:    /s/ *Harrison G. Rich*
       KURT M. PANKRATZ
       CHAD C. WALTERS
       WAYNE O. STACY
       JENNIFER C. TEMPESTA
       JAMES C. WILLIAMS
       HARRISON G. RICH
       CLARKE W. STAVINOHA

       Attorneys for Plaintiff
       SYMANTEC CORP.