IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>ZSCALER, INC.,<br><br>　　　　　　　　Defendant. | Case No. 3:17-cv-04426-JST |

**SUPPLEMENTAL JOINT LETTER BRIEF REGARDING ZSCALER'S RESPONSE TO SYMANTEC'S REQUESTS FOR PRODUCTION NOS. 68 AND 77**

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom B - 15th Fl.
450 Golden Gate Avenue
San Francisco, CA 94102

　　　　Re:　　*Symantec Corporation v. Zscaler, Inc.*, Case No. 3:17-cv-04426-JST

Dear Judge Hixson:

　　　　Pursuant to the Court's May 16, 2019 Order (Dkt. 267), counsel for the parties met and conferred telephonically on May 17, 2019 and May 21, 2019 in good faith to discuss Symantec's proposed narrowing of RFP 77 and the effect of the Court's ESI discovery order on Zscaler's obligation to produce documents in response to RFPs 68 and 77. As explained in Section I below, the parties have resolved their dispute regarding the effect of the ESI order on RFPs 68 and 77. The parties have otherwise been unable to reach agreement on the remaining issues and, therefore, submit this supplemental joint letter brief.

Very truly yours,

| | |
|---|---|
| BAKER BOTTS | KEKER, VAN NEST & PETERS LLP |
| */s/ Bryan D. Parrish* | */s/ Neha Mehta* |
| Bryan D. Parrish | Neha Mehta |
| *Counsel for Symantec Corporation* | *Counsel for Zscaler, Inc.* |

Joint Discovery Letter Brief
May 23, 2019

## I. Joint Section – Background of the Dispute

The parties previously submitted a joint letter brief regarding Symantec's Request for Production Nos. 68 and 77.  *See* Dkt. 262.  Following a hearing held on May 8, 2019, the Court entered the following Order:
1. The parties shall meet and confer concerning Symantec's proposed narrowing of RFP 77 to see if they can reach an agreement.
2. Within one week, the parties shall submit a further joint discovery letter brief, discussing:
    a. the narrowed RFP 77 (if that issue is not resolved during meet and confer),
    b. the effect of the ESI and custodian stipulation on Zscaler's obligation to produce documents in response to RFPs 68 and 77,
    c. Zscaler's burden in responding to the narrowed RFP 68, and
    d. other issues the parties wish to raise concerning RFPs 68 and 77.

Dkt. 267.

### A. Meet and Confer Concerning Symantec's Narrowed RFP 77

Pursuant to the Court's order, Symantec provided Zscaler with its narrowed RFP 77, which requested: "Documents exchanged with Morgan Stanley related to Zscaler's initial public offering that are sufficient to show any valuations of Zscaler or the accused products from Mar. 16, 2017 to Mar. 16, 2018."  The parties met and conferred regarding Symantec's narrowed request, but were unable to reach agreement.

### B. Agreement Regarding the Effect of the ESI Stipulation on RFPs 68 and 77

In view of the Court's order, the parties met and conferred to discuss the effect of the Court's Order Regarding Discovery, Including Discovery of Electronically Stored Information (the "Discovery Order") on RFPs 68 and 77.  Dkt. 115.  The Discovery Order entitles each party to 225 RFPs, 30 ROGs, and 75 RFAs.  *Id.* at 2-3.  Separately, the Discovery Order outlines the "search methodology" agreed to by the parties for conducting email discovery.  *Id.* at 4.  At the meet and confer, Symantec confirmed that responding to RFP Nos. 68 and 77 does not require Zscaler to search email.  And, Zscaler acknowledged that the Discovery Order does not alter a party's general duty in responding to RFPs—subject to a party's objections and claims of privilege—to conduct a reasonably diligent search for responsive documents that exist independently of email.

## II. Symantec's Supplemental Arguments Regarding Narrowed RFP Nos. 68 and 77

Pursuant to the Court's order, Symantec provides the following supplemental arguments regarding narrowed RFP Nos. 68 and 77.  As explained below, narrowed RFPs 68 and 77 are tailored requests for specific, relevant documents.  Zscaler has failed to identify any burden that would outweigh the relevance of these requests.  Therefore, Symantec requests that Zscaler be compelled to produce documents responsive to RFPs 68 and 77.

*Symantec's Narrowed RFP No. 68*

Joint Discovery Letter Brief
May 23, 2019

      Symantec's narrowed RFP No. 68 requests documents describing Zscaler's relationship with its third-party investors TPG and Lightspeed Venture Partners that show valuations of Zscaler or valuations of the accused products.

      As Symantec noted in the original letter brief (Dkt. 262), RFP No. 68 is relevant to at least the valuation of the accused functionalities and the hypothetical negotiations at the time of infringement. In particular, the perception and value of Zscaler's products and features are applicable to at least *Georgia-Pacific* factors 8, 11, and 12, which include "the established profitability of the product made under the patent; its commercial success; and its current popularity," "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use," and "the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions," respectively. Additionally, documents responsive to RFP No. 68 are relevant to at least *Panduit* factor 1, demand for the patented produce, and factor 4, the amount of profit the patent owner would have made. Valuations responsive to RFP 68 bear directly on these issues. Thus, Zscaler's production of documents responsive to RFP No. 68 is essential to Symantec's ability to formulate its damages model and accurately formulate a hypothetical negotiation.

      Zscaler does not appear to challenge the relevance of this request. Indeed, during the follow-up meet and confers, Zscaler offered to produce its valuations made pursuant to IRC 409A. Symantec rejected this compromise for the simple reason that IRC 409A valuations are not the same as venture capital valuations, which is the focus of narrowed RFP 68.

      Zscaler has yet to identify any concrete burden related to producing these venture capital-related valuation documents. Zscaler's claim that it is overly burdensome to clear third-party confidentiality for the requested documents is baseless. Addressing third-party confidentiality (e.g., by providing requisite notices) is a routine and straightforward aspect of discovery and does not excuse Zscaler from its discovery obligations. This is particularly true in this case as Symantec has narrowed the number of third-parties for RFP No. 68 to two: TPG and Lightspeed Venture Partners, and there is no indication in the record that these third parties have or would have any objections to production. Symantec therefore requests that Zscaler produce documents responsive to this narrowed request.

***Symantec's Narrowed RFP No. 77***

      Symantec's narrowed RFP No. 77 requests "[d]ocuments exchanged with Morgan Stanley related to Zscaler's initial public offering that are sufficient to show any valuations of Zscaler or the accused products from Mar. 16, 2017 to Mar. 16, 2018."[1] This request is relevant to numerous issues between the parties.

---

[1] Zscaler's website identifies Morgan Stanley as one of Zscaler's lead underwriters for Zscaler's IPO. *See* Zscaler, Zscaler Announces Closing of Initial Public Offering and Exercise of the Underwriters' Option to Purchase Additional Shares, *available at* https://www.zscaler.com/press/zscaler-announces-closing-initial-public-offering-and-exercise-underwriters-option-purchase-additional-shares.

2

Joint Discovery Letter Brief
May 23, 2019

First, Symantec's damages contentions outlined theories of recovery under a reasonable royalty and/or lost profits damages model. Documents evidencing the market for secure web gateways and DLP products (i.e., the patented technologies) is central to a lost profit's analysis under Panduit Factor 2. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 n.5 (Fed. Cir. 2017) ("In a complex market with numerous competitors, **a patentee may be awarded lost profit damages calculated using its market share among its competitors**.") (emphasis added). Documents exchanged between Zscaler and Morgan Stanley leading up to the IPO would shed light on the market for secure web gateways and is therefore relevant to issues of damages.

Second, Zscaler itself has made RFP No. 77 relevant by bringing into question prior dealings between the parties regarding Symantec's potential acquisition of Zscaler. As Symantec noted on the May 17, 2019 meet and confer, Morgan Stanley approached Symantec shortly before the Zscaler IPO with a last-minute offer to sell Zscaler. Zscaler should not be permitted to frame the parties' previous contacts in a way that benefits Zscaler by excluding additional, related dealings.

As with RFP 68, Zscaler's burden to produce responsive documents is minimal. Symantec's request is limited to documents exchanged with one third-party over a one-year period. Zscaler cannot plausibly claim that providing Morgan Stanley with the requisite notice to clear third-party confidentiality is burdensome as addressing confidentiality concerns for multiple third-parties, let alone a single third-party, is undemanding and customary.

Accordingly, Symantec requests that the Court compel Zscaler to produce documents responsive to narrowed RFPs 68 and 77.

### III.      Defendant Zscaler's Position

Symantec's eleventh-hour attempts to rewrite RFPs 68 and 77 do not make the information sought by these requests any more relevant. Nor do they make them any more proportional to the needs of the case, especially in light of all the related information already collected and produced by Zscaler. And, as a practical matter, Symantec's revisions do not reduce the burden on Zscaler of having to conduct yet another search for potentially responsive documents.

*Symantec's Revised RFP No. 68*

Symantec's RFP 68 seeks information that is both irrelevant and disproportionate to the needs of the case. Its purported narrowing of the request does not change this.

First, none of the *Georgia-Pacific* or *Panduit* factors that Symantec points to in support of its relevance argument are concerned with the overall company enterprise or corporate market value of the accused infringer or the entire market value of the accused infringer's business line (Zscaler's product platform)—*i.e.*, none relate to the information sought by RFP 68. Moreover, with respect to the *Georgia-Pacific* factors, Symantec contends that any hypothetical reasonable royalty negotiation would have concluded by 2014, making documents from 2015 to 2018 temporally irrelevant.

Joint Discovery Letter Brief
May 23, 2019

  More importantly, even if the information sought were somehow relevant, Symantec does not explain in its supplemental brief, just as it did not in its original brief, why the detailed sales, marketing and financial information it already has demanded and received from Zscaler is not sufficient for purposes of preparing its damages case. Symantec already has all of Zscaler's financial information, all of its relevant sales information, and voluminous and detailed marketing information, including assessments of the competitive landscape and Zscaler's place in that landscape. That should be more than enough. *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at \*1 (N.D. Cal. Jan. 13, 2016) (explaining relevance alone is not enough; "a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case"). Symantec's inability to explain why it needs more information confirms their requests are unfocused fishing expeditions into Zscaler's business.

  Turning to the specific question of burden, while Symantec pitches its revisions to RFP 68 as narrowing the request, as a practical matter the request remains almost as broad and unfocused as the original version. As revised, RFP 68 still requires Zscaler to go back to search for and wade through a decade's worth of documentation involving its two principal third-party venture investors. And, as explained by Zscaler during the telephonic hearing on May 8, 2019, the types documents Symantec seeks—if they exist at all—are not kept in a single centralized repository or in the custody of a particular individual. Prior to its IPO, Zscaler communicated and exchanged information with its investors, including specifically TPG and Lightspeed, through a variety of channels. Thus, documents "describing Zscaler's relationship with its third-party investors TPG and Lightspeed Venture Partners that show valuations of Zscaler or valuations of the accused products" may be located in a number of different custodial and non-custodial locations within the company. Complicating matters is the fact that several of the individuals involved with interfacing with TPG and Lightspeed in earlier years of Zscaler's existence as a company are no longer with the company.

*Symantec's Revised RFP No. 77*

  Symantec's rewritten RFP 77 likewise seeks irrelevant information. Documents exchanged between Zscaler and its investment bankers in 2017 and 2018 are not relevant to a hypothetical reasonable royalty negotiation that Symantec itself contends would have concluded by 2014. And, as for Symantec's lost profits damages theory, Symantec merely claims that RFP 77 *might* turn up relevant information about Zscaler's market share. But RFP 77 still seeks far more than just market share information. It seeks any valuations of Zscaler or its products, even though valuations of Zscaler and its platform as a whole are not relevant.

  Symantec also claims that Morgan Stanley approached Symantec shortly before the Zscaler IPO with a last-minute offer to sell Zscaler. But, as far as Zscaler knows, nothing of the sort actually happened. This event, which if it occurred at all (and there is no evidence that it did), occurred without Zscaler's knowledge. Zscaler communicated this to Symantec during the parties' May 21, 2019 meet and confer, and asked Symantec to identify documents showing that this offer occurred. Counsel for Symantec did not do so. And, of course, Symantec did not buy Zscaler. Instead, Zscaler conducted a successful IPO and is now a public company, whose current market is and has been publicly available for well over a year.

Joint Discovery Letter Brief
May 23, 2019

      Last, but far from least, just as with RFP 68, Symantec makes no effort to explain why it needs *still more* information about Zscaler's finances, valuation, and market share, beyond all of the information produced by Zscaler to date—which further supplemented all of Zscaler's securities filings (including those from the IPO) that have been publicly available and already provided substantial information on Zscaler's valuation in the first place.  Any arguably relevant information sought by RFP 77, like RFP 68, is cumulative and disproportionate to the needs of the case at this late stage of fact discovery.  Also, the only way to reliably determine what documents were actually "exchanged with Morgan Stanley" is through collecting and reviewing email, a process which Symantec concedes is governed by the Discovery Order and has been completed.

      For all of these reasons, the Court should deny Symantec's request to compel production of additional documents in response to RFP 68 and 77.