UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>       Plaintiff,<br><br>v.<br><br>ZSCALER, INC.,<br><br>       Defendant. | Case No. 17-cv-04426-JST   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 290, 291, 293, 294, 295, 297 |

The Court had a telephonic hearing this afternoon concerning the parties' joint discovery letter briefs at ECF Nos. 291, 294 and 297. The Court now issues the following order on them and the related motions to seal.

## I.   DISCOVERY MOTIONS

### A.   ECF No. 291

Zscaler moves for a protective order to bar Symantec from deposing Kailash Kailash, its Chief Architect and co-founder, under the apex doctrine. In general, "[w]hen a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery." *Anderson v. Cty. of Contra Costa*, 2017 WL 930315, at *3 (N.D. Cal. March 9, 2017) (citations and quotation marks omitted). "Discretion is necessary because apex depositions create a tremendous potential for abuse or harassment." *Id.* (citations and quotation marks omitted). "Courts may limit discovery after considering (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (citations and quotaion marks omitted).

Zscaler has failed to show that Kailash is a high-level executive. Zscaler's March 5, 2018

1   SEC Form S-1 identified the company's "executive officers and directors as of January 31, 2018."
2   It listed the CEO, CSO, CFO, CLO, CTO and COO as executive officers, but not the Chief
3   Architect. Nor is Kailash a member of the Board of Directors. Symantec provided a Zscaler
4   organizational chart in connection with the letter brief, and it shows that no one reports to Kailash
5   – unlike the CEO, CSO, CFO, CLO, CTO and COO, who all have direct reports.[1] Oddly, Zscaler
6   has put Jay Chaudry (the company's other co-founder, its CEO, and the Chairman of the Board)
7   up for deposition and designated Amit Sinha (the CTO and a member of the Board of Directors) as
8   a 30(b)(6) witness, even though Chaudry and Sinha are clearly higher level within the company
9   than Kailash is. This is an inversion of the apex doctrine, offering up the highest-level executives
10  and trying to block the deposition of someone less important. This is not what the apex doctrine is
11  for.

12  Regardless, even if Kailash were an apex witness, because he has been the Chief Architect
13  of the accused platform since 2008, he likely has unique, non-repetitive knowledge. That's what
14  the title "Chief Architect" implies. Zscaler refers to other witnesses Symantec has deposed but
15  does not explain how they obviate the need to depose Kailash. Further, the fact that Kailash is
16  listed as an inventor on several Zscaler patents related to the technology at issue in this case
17  underscores his personal involvement in the development of the technology and makes it likely
18  that he has unique, non-repetitive knowledge.

19  Accordingly, Zscaler's motion for a protective order is **DENIED**.

20  **B.    ECF No. 294**

21  This motion came into sharper focus during the hearing. In response to RFP 111, Zscaler
22  is now seeking a visual inspection of the hardware on which Symantec's security software runs for
23  those products listed in RFP 111 that are delivered to customers on hardware appliances. Zscaler
24  is not asking to plug the hardware in, turn it on, or use it – just to look at it.

25  This visual inspection has some relevance. Not a lot, but some. The patents in suit
26  concern Symantec's software, not any hardware. Still, the extent to which Symantec's on-premise

---

[1] It is not evident in the org chart, but the Form S-1 states that Sinha is the CTO.

1  products compete with Zscaler's cloud offering is relevant to issues in the case other than liability.
2  It used to be relevant to Symantec's lost profits claim, but Symantec has now abandoned that. It is
3  still relevant to Symantec's claim for a permanent injunction. And it's relevant to whether Zscaler
4  and Symantec are competitors in the same territory in the same line of business, which is one of
5  the *Georgia-Pacific* factors in determining a reasonable royalty.

6  To be sure, the primary evidence about whether Symantec's on-premise products compete
7  with Zscaler's cloud offering would be market research, customer surveys, market-wide business
8  trends, and the like. After all, the issue comes down to customer demand and whether customers
9  view these products as alternatives to each other. There are probably a number of reasons
10 customers have for thinking or not thinking of these products as alternatives to each other, such as
11 cost, ease of use, effectiveness, and vendor reputation. But surely one of the most obvious
12 differences is that an on-premise product requires the customer to install one or more pieces of
13 hardware at its facility. The hardware takes up space. It uses energy. It probably has to be put
14 somewhere secure and air conditioned. It's a piece of equipment that has to be cared for.

15 What this equipment looks like, including how big it is, how it is shaped, how many cords
16 it has, and so on, is relevant. What really matters, of course, is how customers perceive the
17 hardware and the burdens it imposes, but even evidence of customer or market perception is made
18 more understandable if Zscaler is able to do a visual inspection and bring along its witnesses and
19 experts to take pictures of the hardware. This visual inspection of the hardware that has to be
20 installed at the customer site lends concreteness to the difference between an on-premise product
21 and a cloud offering. For example, pictures Zscaler takes of the hardware would make it easier for
22 the trier of fact to appreciate the difference between Symantec's on-premise products and
23 Zscaler's cloud product.

24 Symantec says this will be burdensome, but its explanation of burden is unimpressive.
25 Essentially, Symantec would have to find examples of its own products that are currently in its
26 supply chain, ship them to a location, take them out of the boxes, and then make them available to
27 Zscaler to visually inspect. That's not much burden.

28 Accordingly, the Court **GRANTS** Zscaler's motion for a visual inspection as described

above.

**C.     ECF No 297**

Symantec moves for a protective order to bar the deposition of Richard Hill, its Interim President and CEO, under the apex doctrine. Hill had no prior association with Symantec until he became a member of the Board of Directors in January 2019. On May 9, 2019, Greg Clark resigned as Symantec's CEO and Hill was appointed as his interim replacement. Later that same day, Hill made statements on a quarterly earnings call to the effect that Symantec's on-premise business had fallen off more quickly than anticipated, and the cause was customers moving to the cloud. Zscaler originally argued that Hill's deposition was relevant to Symantec's lost profits claim. Symantec has since dropped that claim, but Zscaler argues the deposition is still relevant to Symantec's claim for an injunction.

This deposition is exactly what the apex doctrine is designed to prevent. It is implausible to suggest that in the hours, or perhaps minutes, between Clark's resignation and Hill's appointment and participation in the earnings call, Hill could have acquired any unique, non-repetitive information. Statements in an earnings call about a general trend in the company's business, a trend that any number of people could testify to, are not enough to justify an apex deposition. For example, Symantec's Alexander Campbell, said much the same thing at pages 66-70 of the rough transcript of his deposition. "Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues." *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at \*16 (N.D. Cal. May 9, 2011).

Symantec's motion for a protective order is **GRANTED**.

## II.     MOTIONS TO SEAL

**A.     ECF No. 290**

This motion to seal is **GRANTED**.

**B.     ECF No. 293**

This motion to seal is **GRANTED**.

**C.     ECF No. 295**

This motion seeks to seal 145 pages of deposition testimony, including testimony about a

4

public earnings call.  This motion fails the narrow tailoring requirement in Local Rule 79-5(d)(1)(B).  It is **DENIED** without prejudice to filing a narrowly tailored motion.

**IT IS SO ORDERED.**

Dated: July 18, 2019

THOMAS S. HIXSON
United States Magistrate Judge